# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

| | |
|---|---|
| TIMOTHY EDWARD McHUGH and TAMI JO McHUGH, | **Bankruptcy Case No. 09-04053-JDP** |
| **Debtors.** | |

_____

# MEMORANDUM OF DECISION
_____

**Appearances:**

D. Blair Clark, Boise, Idaho, Attorney for Debtors.

Jeremy Gugino, Boise, Idaho, Chapter 7 Trustee

*Introduction*

In this case, the Court revisits the "tools of the trade" and "implements" exemption under Idaho law.

Chapter 7 trustee Jeremy Gugino ("Trustee") filed a Trustee's Objection to Claim of Exemption, Docket No. 45; Debtors Timothy Edward

MEMORANDUM OF DECISION - 1

McHugh and Tami Jo McHugh ("Debtors") responded. Docket Nos. 47, 95. The Court conducted an evidentiary hearing on the objection on April 6, 2010, and thereafter took the issues under advisement. Having now considered the testimony and evidence, the arguments of the parties, as well as the applicable law, this Memorandum constitutes the Court's findings, conclusions and disposition. Fed. R. Bankr. P. 7052; 9014.[1]

*Facts*

Debtors are well-educated professionals. Timothy[2] McHugh is a physician, specializing in family medicine. He practices in Meridian at a clinic which he owns. Tami McHugh has been a certified public accountant since 1984, and has an established tax preparation practice. Additionally, in 2003 she became a licensed real estate broker, and now also works in the real estate business.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2] For clarity, the Court will refer to Debtors by first names. No disrespect is intended.

MEMORANDUM OF DECISION - 2

In 1995, Debtors purchased approximately 14 acres of land in Kuna, Idaho. The parcel was once part of a larger tract of land which was farmed, but that had later been subdivided. Of their property, one acre is designated by the Ada County Assessor's Office as their home site, while the remaining acreage is zoned by the county as "irrigated agricultural" land. Ex. 105. Included on their home site parcel is Debtors' home, a barn and other outbuildings.

To maintain the agricultural status of their parcel, and thus the property tax benefits that go along with it, Debtors must comply with certain county regulations. When Debtors initially purchased the land, Tami filed a petition with the county to retain the agricultural zoning designation, which the county approved. In addition, Debtors are required, on an ongoing basis, to prove that they receive at least $1,000 in gross proceeds from non-hobby farming activity on their land each year. According to Debtor's testimony, this activity may consist of growing a crop, or raising animals, to sell. They also must file a Schedule F form with

MEMORANDUM OF DECISION - 3

their yearly income taxes.[3] Debtors have successfully maintained the agricultural status of their parcel continuously since they purchased it.

Debtors have two to three acres of the property in pasture. At one time, Debtors conducted a horse-breeding business, but they found it was not profitable, and discontinued it. Today, they have three horses on the property. Two horses are theirs, which they consider to be pets; the other belongs to Timothy's mother. Debtors also used to raise pigs for sale on the property. But when a boar broke out of its pen and stampeded onto neighboring property, Debtors discontinued the pig operation.

Nine to ten acres of the property can be farmed. In the past, Debtors raised oats and alfalfa, and Timothy rotates the crops from time to time. Timothy testified that the alfalfa crops typically produce three cuttings, and sometimes four. In turn, each cutting generates about four tons of hay. Debtors retain four tons to feed the horses, and sell the remainder. This is

---

[3] Schedule F is a tax form entitled "Profit or Loss from Farming". *See* Ex. 108.

MEMORANDUM OF DECISION - 4

how they generate the necessary revenue to satisfy the county's farming requirements.

Finally, Debtors have recently established a small vineyard on their parcel, and hope to sell the grapes to a vintner. However, the vines are only three years old, and Debtors do not expect to produce saleable grapes for at least two more years.

On schedule I of the bankruptcy schedules, Timothy listed his occupation as "Physician"; Tami's occupation is listed as "Real Estate broker/CPA". Ex. B. On schedule B, Debtors listed numerous pieces of farm equipment as their personal property. They have claimed the farm equipment exempt on schedule C pursuant to Idaho Code § 11-605(3). Trustee objected to this claim of exemption.

*Analysis and Disposition*

I.

When a petition for bankruptcy is filed, "all legal or equitable interests of the debtor in property" become the property of the bankruptcy estate, and are available for distribution to creditors. *Rousey v. Jacoway*, 544

MEMORANDUM OF DECISION - 5

U.S. 320, 325 (2005) (quoting § 541(a)(1)).  To allow debtors a financial fresh start after bankruptcy, however, the Code permits them to shield, or exempt, certain interests in property from administration in the bankruptcy case.  *Id.*; *see e.g.,* 11 U.S.C. § 522(d).  Because Idaho has "opted out" of the Code's exemption scheme, debtors in this state may claim only those exemptions allowable under Idaho law, as well as those listed in § 522(b)(3).  Idaho Code § 11-609; 11 U.S.C. § 522(b)(3)(A).

As the objecting party, Trustee bears the burden of proving that Debtors' claims of exemption are not proper.  Rule 4003(c); *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005).  The validity of a claimed exemption is determined as of the date of filing of the bankruptcy petition.  11 U.S.C. § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re Chiu),* 226 B.R. 743, 751 (9th Cir. BAP 2001); *In re Yackley*, 03.1 I.B.C.R. 84 (Bankr. D. Idaho 2003).  Finally, exemption statutes are to be liberally construed in favor of Debtors.  *In re Kline*, 350 B.R. at 502 (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001).

MEMORANDUM OF DECISION - 6

II.

In this case, Debtors seek to exempt several items as "tools of the trade" and "implements" under Idaho Code § 11-605(3):

 1953 Farmwall [sic] tractor  – $500
 Horrow [sic] and disk [sic]  – $100
 Riding lawnmower  – $200
 Plow  – $200
 Baler – broken – $0
 1970 John Deere tractor  – $1,500
 Mower  – $100
 Corregator [sic]  – $150
 Sprayer  – $25
 "Very old flatbed trailer"  – $225

Docket Nos. 16, 42.[4]  This exemption statute provides:

> An individual is entitled to exemption, not exceeding one thousand five hundred dollars ($1,500) in aggregate value, of implements, professional books, and tools of the trade[.]

Idaho Code § 11-605(3)[5].

---

[4] Debtors also claimed a "1991 Chevrolet pickup – used exclusively on farm" as exempt in the amount of $950 under Idaho Code § 11-605(3).  Docket No. 16.  Trustee has not objected to this claim of exemption, and thus it is deemed allowed. § 522 (l)(b); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992).

[5] This statute was amended on March 31, 2010.  However, as these amendments became effective post-petition, they are inapplicable to this case.

MEMORANDUM OF DECISION - 7

Trustee argues that none of the items claimed exempt qualify for treatment as "tools of the trade" or "implements" for purposes of Idaho law.

A. <u>Tools of the Trade</u>.

Trustee objects to Debtors' claim of exemption under the "tools of the trade" exemption because Debtors' primary source of income is not farming, and therefore, Debtors' retention of this equipment is not necessary for their continued financial support.  In response, Debtors contend that, because of zoning requirements, they must maintain a farming operation on their premises, that they indeed do so, as evidenced by the farm income and expenses shown in their tax returns.  As a result, Debtors assert they are entitled to the exemption.

The Idaho "tools of the trade" exemption has been analyzed many times by the Court.  From these decisions, it is clear that a debtor may have more than one occupation.  *See, e.g., In re Liebe*, 92 I.B.C.R. 145, 146 (Bankr. D. Idaho 1992) (debtor was a school teacher who also did carpentry work in the evenings, on weekends and in the summer).  Thus, that Debtors

MEMORANDUM OF DECISION - 8

generate income in several ventures and businesses is not, standing alone, a disqualifying impediment to their exemption claim.

On the other hand, the Court has concluded that, to constitute an exempt tool of the trade, an item must be "actually utilized by the Debtor in earning her living and it is necessary to the Debtor's continued employment." *In re Sievers*, 96.1 I.B.C.R. 5, 5 (Bankr. D. Idaho 1996), citing *In re Biancavilla*, 94 I.B.C.R. 150, 151-52 (Bankr. D. Idaho 1994)). Moreover, the Court has required that the items claimed exempt must be "necessary to enable [the debtor] to pursue and make a living at [his or her] trade." *In re Fancher*, 94 I.B.C.R. 39, 39 (Bankr. D. Idaho 1994) (quoting *In re Moon*, 89 I.B.C.R. 26, 28 (Bankr. D. Idaho 1998)). Put another way, this Court has observed that "one of the primary components in analyzing whether a debtor is entitled to exempt tools of the trade is whether the debtor truly needs those tools for the debtor's financial support." *In re Moore*, 05.3 I.B.C.R. 51, 51 (Bankr. D. Idaho 2005). Furthermore,

> In cases where a debtor has more than one trade or occupation, the Court has required not only that the tools in question be necessary for the

MEMORANDUM OF DECISION - 9

> debtor to continue in a chosen occupation, but also
> that the income generated from the occupation in
> which the tools are used be necessary for the
> debtor's continued financial support.

*Id.* at 52.

Debtors advance two arguments to support their exemption claim. First, they contend that because their "farm" generates some income, as evidenced by the fact that the county requires them to receive at least $1,000 in annual income from farm products in order to retain favorable tax treatment of the property, the equipment is necessary to make that happen. However, under these facts, the Court can give little credit to this contention.

Although the county tax assessor chooses to distinguish a "hobby farm" from a bona fide farming operation using the liberal bright-line of receiving $1,000 in gross farm income per year, the Court is not bound by such a designation, as zoning is not the issue here. As noted above, for exemption purposes, the Court must consider whether farming can be considered Debtors' occupation, and whether such activity generates

MEMORANDUM OF DECISION - 10

income necessary for the debtor's continued financial support. The Court concludes that Debtors do not meet this standard.

While Debtors have recently generated modest amounts of gross revenues from "farming," they have not profited from their endeavor. Indeed, the record shows that in 2009, Debtors' gross income from farming, as reported to the Internal Revenue Service, was only $850, which resulted in a *net loss* from farming of $1,234. Ex. A. In 2008, the gross farm receipts were $1,765, for a net loss of $722. Ex. 108. Finally, in 2007, the farming gross income was $1,410, generating a net loss of $3,329! *Id*.

Obviously, even large farm operations suffer losses, perhaps for several years running. And it would be an odd requirement in a bankruptcy case that a debtor generate a profit to exempt necessary tools from sale for creditors. But in this case, the combination of Debtors' minimal revenues generated by their ostensible farming operation, and their consistent losses, show the Court that they do not need the equipment for their financial support. Indeed, as to making a living, quite the opposite

MEMORANDUM OF DECISION - 11

is true; Debtors would be wise to spend their time in other endeavors than attempting to farm.

Debtors' second argument is that the property tax savings from having their property classified as agricultural are substantial, and these savings should be considered in analyzing the necessity of their farming operation. Once again, given the context, the Court disagrees.

The premise for a "tools of the trade" exemption under state law is to enable debtors to retain tools necessary for them to earn a living. To accept Debtors' suggestion, the Court would have to read Idaho Code § 11-605(3) expansively to allow tools to be exempted any time their existence resulted in some sort of indirect financial benefit. While the Court is mindful of its need to read the statute liberally, because this exemption statute requires some nexus between a "tool" and the debtor's manner of earning a living, Debtors' tax savings are not relevant in this analysis.

Moreover, Debtors' argument about the tax savings generated from their activities finds little support in the record. Exhibit 105 shows that in 2009, Debtors' 13.68 acre parcel of land, zoned agricultural for property tax

MEMORANDUM OF DECISION - 12

purposes, was the subject of a tax bill of $2,557.74. This equates to $186.97 per acre. In contrast, a nearby 10 acre parcel not zoned agricultural had property taxes of $2,645.52 in 2009, or in other words, $264.55 per acre. Ex. 107; *see also* Ex. 107 (a 10.961 acre parcel not zoned agricultural had a 2009 tax bill of $2,583.12, which equates to taxes in the amount of $235.66 per acre). As near as the Court can tell from the evidence, Debtors' tax savings due to the agricultural zoning of their property is about $1,100 per year. Recall, Debtors' farm losses, as evidenced on the IRS Schedule F forms in the record, were $1,234 in 2009; $722 in 2008; and $3,329 in 2007.

Comparing the property tax benefits with the actual net losses from their farming business, Debtors' argument that they enjoy a significant financial benefit from agriculture, and thus need their farm equipment, rings hollow. Simply put, even if the Court read Idaho Code § 11-605(3) broadly enough to consider derivative benefits from "tools of the trade," the Court find no significant benefit exists here.

//

//

MEMORANDUM OF DECISION - 13

B. <u>Implements</u>.

Predictably, Debtors also argue the items of farm equipment are exempt as "implements" under Idaho Code § 11-605(3). This argument also lacks merit under these facts.

To be exempt under this statute, it is not enough that an item may be fairly described as an "implement." Indeed, in prior decisions, this Court has treated implements and tools of the trade similarly when it "defined the implements and tools of a debtor's trade to 'consist of such instruments and things as are used or employed in his work.'" *In re Aguero*, 93 I.B.C.R. 65, 65 (Bankr. D. Idaho 1993) (quoting *In re Moon*, 89 I.B.C.R. at 28). Moreover, the Court stated that "while it is not expressed in the state statutes, in order to qualify as an implement or tool of trade, the item in question must be necessary to debtor to continue his trade or profession." *In re Aguero*, 93 I.B.C.R. at 66 (citing *In re Ackerman*, 91 I.B.C.R. 26, 27-28 (Bankr. D. Idaho 1991)); *In re Moon*, 89 I.B.C.R. at 30). As with tools of trade, in order to be exempt, implements must be necessary to the debtor's ability to earn a living.

MEMORANDUM OF DECISION - 14

As discussed above, the Court has determined that Debtors' farming operation, such as it is, does not significantly contribute to their financial support. As a result, their farm equipment can not be exempted as implements under Idaho Code § 11-605(3), for the same reasons the items can not be exempted as tools of the trade under that statute.

*Conclusion*

Plainly, Debtors' purported "farming operation" is the result of a personal decision about lifestyle, as opposed to a reasoned judgment about how best to earn a living. Debtors generate the vast bulk of the income on which to live by practicing their professions, not by pursuing their farming hobby. While the Idaho legislature intended that debtors not lose to creditors the essential devices used to provide financial support, Debtors' farm equipment are not such necessary items.

The Court concludes that Debtors' items of farm equipment are not exempt under Idaho Code § 11-605(3) as tools of the trade or implements. Trustee's objection will be sustained, and Debtors' claim of exemption will be disallowed, by separate order.

MEMORANDUM OF DECISION - 15

Dated: May 27, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 16